
Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7933 | **DATE** | 6/5/2001 |
| **CASE TITLE** | Cynthia Dorsey vs. Dwain Givens, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. The motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 7 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| ✓ | Mail A 450 form. | ⊕ CD-7 FILED FOR DOCKETING 01 JUN -6 AM 8:36 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA DORSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 99 C 7933 |
| | ) | |
| DWAIN GIVENS, COUNTY OF WILL | ) | |
| and WILL COUNTY ADULT | ) | |
| DETENTION CENTER and | ) | |
| SHERIFF OF WILL COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

Dollar STED

JUN 7 – 2001

JUN 7   2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, who was incarcerated in the Will County Adult Detention Center, sues Givens, a correctional officer, and the Will County Sheriff, for alleged improper sexual touching. Givens denies the allegations and Sheriff Ward (Sheriff) is not at all sure Givens molested plaintiff. It is undisputed, however, that sexual misconduct involving a prisoner is both a violation of work rules and a crime; that the Sheriff initiated an investigation immediately after being advised of possible misconduct; that Givens was terminated and that he was thereafter convicted of five counts of Custodial Sexual Misconduct, none of which involved plaintiff. The Sheriff has moved for summary judgment and, in a rather creative and practical approach, the parties have chosen to present a legal issue based upon a stipulation of facts.

The issue here is not whether or not Givens was acting under color of law, a federal question. Nor is it whether the Sheriff has *respondeat superior* liability for wilful and wanton misconduct by Givens. *See* 745 ILCS 10/2-202 and 10/2-109; *see also* 745 ILCS 10/8-101 (the suit was filed well over a year after the alleged incidents). Rather, it is whether or not Givens

25

would be entitled to indemnification pursuant to 745 ILCS 10/9-102, a question of Illinois law. The parties assume that Givens has no deep pockets, if he has any pockets at all, and they are therefore seeking a determination of whether or not the Sheriff will have to pay any judgment against Givens, assuming he is liable. The issue, then, is whether the stipulated conduct of Givens was arguably within the scope of his employment (the conduct is stipulated solely for the purposes of this motion). That conduct is four occasions of a sexual remark or grabbing or fondling of plaintiff's breast and/or buttock while she was clothed.

The alleged misconduct was, without question, under color of law, as Givens was acting as a custodial correctional officer on each occasion and used the power of his position to engage in the misconduct. The Seventh Circuit has also been somewhat hospitable to state law *respondeat superior* claims, and even indemnification claims, when law enforcement officers have used the power of their positions to advance their private agenda. Although the defendant did not contest the assertion that the officer was acting within the scope of his employment in <u>Kolar v. County of Sangamon of State of Illinois</u>, 756 F.2d 564 (7th Cir. 1985), the public entity did dispute that claim in <u>Hibma v. Odegaard</u>, 769 F.2d 1147, 1153 (7th Cir. 1985) and <u>Coleman v. Smith</u>, 814 F.2d 1142, 1148-49 (7th Cir. 1987). In <u>Hibma</u>, decided under Wisconsin law although that does not appear to be determinative, the county was liable for the acts of officers who conducted investigations, issued reports and testified, all for the purpose of concealing their own burglaries, because they were doing, albeit improperly and for their own purposes, the type of thing law enforcement personnel do. In <u>Coleman</u>, indemnification was granted to defendants who fired the plaintiff and then had him arrested to squelch an investigation into a corruption scheme in which they were deeply implicated. Firings by the

mayor and arrests by the chief of police were a natural part of or incident to the service employment.

There is much to commend that view of scope of employment. Here the Sheriff had clothed Givens with the power to act as a custodian, with physical control over prisoners, and it could be anticipated that he would speak to and touch them in the course of his performance of his duties. If he used unwarranted force, the Sheriff would in all probability be liable. Krieger v. Village of Carpenterville, 8 Ill.App.3d 243, 247-48, 289 N.E.2d 481, 483 (2d Dist. 1972). Sexual molestation and a physical beating can both be manifestations of a desire to exercise domination and power. Restatement (Second) of Agency, which the Illinois courts have often relied upon, recognizes in section 231, Comment a, that minor crimes committed in the prosecution of the business can reasonably be anticipated and in section 245 that an unauthorized use of force can lead to the master's liability if the act was not unexpectable in view of the duties of the servant. It is not unexpectable that the exercise of officially sanctioned coercive power by a male over a female may sometimes be abused. See Mary M. v. City of Los Angeles, 54 Cal.3d 202, 213-14, 814 P.2d 1341 (Cal. 1991).

At the same time, we recognize that a federal court is but a surrogate state court in these circumstances and we are enjoined to be cautious in developing legal concepts that state appellate courts cannot review. See Holtz v. J.J.B. Hilliard W.L. Lyons, Inc., 185 F.3d 732, 750 (7th Cir. 1999). The Illinois courts have repeatedly rejected sexual misconduct as being within the ambit of scope of employment, emphasizing that such conduct is solely for the personal benefit of the transgressor. In Deloney v. Board of Education of Thornton Township, 217 Ill.Dec. 123,128-31. 666 N.E.2d 792, 797-800 (Ill.App. 1 Dist. 1996), a truant officer had sexual

relations with a 16-year-old student. The court, in rejecting any duty on the part of the school district to defend, distinguished excessive force cases which are capable of being characterized as an extension of the police function. The public employment provided the opportunity for misconduct, but that conduct could not be deemed an extension of his responsibilities. Excessive force can have a dual purpose – to make an arrest, to punish, to extract a confession (*see* Wilson v. City of Chicago, 120 F.3d 681, 685 (7th Cir. 1997) – but sexual misconduct is solely for personal gratification.

Deloney followed Randi F. v. High Ridge YMCA, 120 Ill.Dec. 784, 524 N.E.2d 966 (Ill.App. 1 Dist. 1988). Bates v. Doria 104 Ill.Dec. 191, 502 N.E.2d 454 (Ill.App. 2 Dist. 1986), and Webb by Harris v. Jewel Companies, Inc., 92 Ill.Dec. 598, 485 N.E.2d 409 (Ill.App. 1 Dist. 1985), all of which held that sexual misconduct was outside the scope of employment. Each is distinguishable to a degree: Webb and Randi involved private actors, and in Bates the crime was rape. In Webb, however, the court specifically noted that sexual assault, whether rape or fondling, had no relation to the business of the employer. Webb, 92 Ill.Dec. at 601-02, 485 N.E.2d at 412-13. Then, in Wright v. City of Danville, 221 Ill.Dec. 203, 675 N.E.2d 110 (Ill. 1996), the Illinois Supreme Court held that city commissioners who tied the settlement of a voting rights case to their retention as city employees were acting beyond the scope of their employment. The court, relying upon Webb and Deloney, explained that the misconduct was solely for the commissioners' personal benefit and that the public employment provided the opportunity for acts that were not an extension of their legitimate functions. Wright, 221 Ill.Dec. at 210-212, 675 N.E.2d at 117-119.

Settlement of the voting rights case was the type of thing commissioners do, even though

done improperly. The approach by the Illinois Supreme Court in <u>Wright</u> conflicts with that of the Seventh Circuit in <u>Coleman</u> and <u>Hibma</u>, both decided about a decade before. In light of <u>Wright</u>, <u>Deloney</u>, <u>Randi F.</u> and <u>Bates</u>, with their emphasis on personal benefit, we do not believe we can predict that the Illinois courts would conclude that the sexual misconduct alleged here is within the scope of employment, justifying indemnification. The motion for summary judgment is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 5 , 2001.